**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | **Case No. 23-11233-NVA**<br>**Chapter 11 – Subchapter V** |
| **HOLDINGS MANAGEMENT CO., Debtor** | * | |
| **In re:** | * | **Case No. 23-11234-NVA**<br>**Chapter 11 – Subchapter V** |
| **H.M.C., INC., Debtor** | * | |
| | * | **(JOINTLY ADMINISTERED UNDER Case No. 23-11233-NVA)** |

* * * * * * * * * * * * *

**DEBTORS' JOINT CHAPTER 11, SUBCHAPTER V PLAN**

Holdings Management Company ("Holdings") and H.M.C. Inc. ("H.M.C."),, the above-captioned debtors and debtors-in-possession (the "Debtors"), propose the following Joint Chapter 11, Subchapter V Plan (the "Plan") under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code") and the applicable rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules (the "Local Rules") of United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court").

A brief history of the Debtors' business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claims or interests.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

**This Plan is a proposal by the Debtors and subject to court approval after opportunity for objections and a hearing. Please refer to the Scheduling Order entered by the Court for important information regarding Plan voting and objection deadlines.**

Certain capitalized terms not otherwise defined are set forth in Article XV.

## Article I. Source of Payments

Substantive Consolidation. This Plan is premised upon the substantive consolidation of the Debtors' respective bankruptcy estates. The Debtors submit that their assets and debts are sufficiently intertwined to warrant substantial consolidation of their estates, which will recognize the reality of the Debtors' intertwined obligations.

Projected Disposable Income. During the term of this Plan, the Debtors shall submit their Projected Disposable Income (or value of such Projected Disposable Income) necessary for the performance of this Plan to the Subchapter V Trustee (the "Trustee") and shall pay the Trustee the sums set forth herein.

Asset Liquidation and Avoidance Actions. The Debtors anticipate the liquidation of assets, including accounts receivable, and/or the recovery of avoidance actions to supplement their payments to the Trustee.

Plan Payment Deadlines. The Debtors' monthly payments to the Trustee called for under the Plan shall be due no later than the last day of each month, beginning the first full month following the Effective Date.

Section 1146 Exemption. To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, or the vesting, transfer or sale of any property (real or personal) of the Debtors pursuant to, in implementation of or as contemplated by this Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

## Article II. Plan Term

The term of this Plan begins on the Effective Date and ends on the last day of the sixtieth (60th) month subsequent to that date, or such earlier date upon which the Debtors complete all payments due under the Plan.

## Article III. General Distributions Under Plan

The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtors' Projected Disposable Income for that same period.

Disposable Income for Distribution to Unsecured Claims (Class X). "Disposable Income for Distribution to Unsecured Claims" shall be calculated as follows: the gross income of the Debtors during the applicable calendar year, less all expenditures made by the Debtors for their continuation, preservation, or operation during such period (which may include, but are not limited to, rent, wages, supplies, debt service, utilities, the payment of reasonable salary to the Debtors' owner, depreciation, payments under this Plan, and tax liabilities). Unsecured Claims shall be

paid, pro rata, all of the Disposable Income for Distribution to Unsecured Claims in calendar years 2023, 2024, 2025, 2026, and 2027. Within thirty (30) days after the filing of the tax returns for the Debtors, the Debtors shall file a Statement with the Court setting forth the Disposable Income for Distribution to Unsecured Claims for such calendar year. Such amount shall be paid to the Trustee within thirty (30) days after the filing of such Statement, for the Trustee's distribution pro rata to allowed l Unsecured Claims.

Distributions to Adminstrative, Secured, and Priority Claims (Classes I through IX). The Plan also provides for the payment of secured, administrative, and priority claims in accordance with the Bankruptcy Code. The Debtors propose monthly payments of $20,000 to the Trustee for payment of administrative, secured, and priority claims.

Distribution Dates. The Trustee will make quarterly distributions to creditors pursuant to the Plan beginning no later than the twentieth (20th) day of the fourth month after the first monthly payment made by the Debtor. Prior to the Trustee's first quarterly distribution, the Debtors shall submit to the Trustee a proposed distribution report with the amounts to be paid and the payment addresses. The Trustee shall promptly file a status report after making quarterly distributions, detailing the payments made to creditors.

## Article IV. Classification and Treatment of Claims and Interests

1. The Debtors have classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code. A chart detailing each class of claims or interests under the Plan, and the Debtors' proposed treatment for each is attached hereto as **Appendix B**.

2. All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code but not already treated as such under this plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date. Any claim that is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3. For services provided after the Confirmation Date, the Trustee and the attorneys for the Debtors shall file a notice with the Bankruptcy Court of their respective fees and expenses incurred and serve a copy of such notice on all parties in interest. Absent an objection filed within thirty (30) days of the notice, the Trustee shall pay the fees and expenses to the extent funds are available.

4. Disputed Claims:

    a. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, either:

        i. A proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or

ii. No proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

b. Delay of Distribution on a Disputed Claim: No distribution will be made on a disputed claim unless the claim is allowed by a final non-appealable order.

c. Settlement of Disputed Claims: The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Bankruptcy Rule 9019.

d. Dispute Claims Reserve: The Trustee shall maintain a reserve account for all funds available for distribution to disputed claims until such claims have been allowed.

Article V. Payments to Creditors Under Plan

Unless otherwise provided in this Plan or indicated on Appendix B, funds received by the Trustee[1] or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1. Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth on **Appendix B**.

2. Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on **Appendix B**.

3. All secured claims shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth on **Appendix B**.

4. After payment of the foregoing claims, sums received by the Trustee shall be paid, on a pro-rata basis, to allowed general unsecured claims.

5. In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtors shall retain their interests in property of the Estate.

Article VI. Secured Claims Generally

The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code, and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtors' interest in the property, or in the amount subject to

[1] The Debtors seek confirmation of the Plan under Section 1191(b) with the Trustee to make payments to creditors per Section 1194(b).

setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court. Debtors reserve their rights to challenge whether a claim is fully secured or secured at all.

Cramdown Amounts. The Plan proposes impaired treatment of the following secured claims, with each such identified value of the lienholder's interest in collateral (the "Cramdown Amount") to be paid in full under the Plan with interest at nine and three-quarters percent (9.75%), unless otherwise noted:

| Lienholder | Collateral | Cramdown Amount |
|---|---|---|
| Sandy Spring Bank | 1st position blanket lien (other than receivables due from and/or claims against Holder Construction and Grunley Construction) | 250,000 |
| Sandy Spring Bank | receivables due from and/or claims against Holder Construction and Grunley Construction | Collateral surrendered to lienholder |
| Howard County Economic Development Authority | air compressor, pinch roller, dust collector, spray booth | 50,000 |
| Ford | Dodge Grand Caravan | 500 |
| Stiles Machinery | HOMAG Edgebander | 30,000 |
| Mitsubishi | HOMAG Centateq N700 CNC Machine | 70,000 |
| Wells Fargo | Forklift | 500 |
| | | |
| Howard County Economic Development Authority | 2nd position blanket lien | Zero (0) [2] |
| Brickstone Group | 3rd position blanket lien | Zero (0) |
| State Employees Credit Union of Maryland, Inc | 4th position blanket lien | Zero (0) |
| Capital Assist, LLC | 5th position blanket lien | Zero (0) |
| QFS Capital LLC | 6th position blanket lien | Zero (0) |
| BMT Capital, LLC | 7th position blanket lien | Zero (0) |
| Idea 247 | 8th position blanket lien | Zero (0) |
| Newtek | Disputed blanket lien against H.M.C. | Zero (0) |
| CDS Business Services | Disputed blanket lien against H.M.C. | Zero (0) |

[2] There is no value in the assets beyond the amount of the Sand Spring Bank lien. Claim will be treated as unsecured, as will follow for subordinate lienholders.

| | | |
|---|---|---|
| PA Department of Revenue | Disputed tax lien | Zero (0) |
| IRS | Disputed tax lien | Zero (0) |

Upon satisfaction pursuant to the terms of this Plan or by Order of the Bankruptcy Court, the holders of such secured claims shall cause their liens to be released.

Should a lienholder become authorized to and thereafter proceed with its *in rem* rights against property of the Debtors' estates, resulting in a sale of such asset(s), the lienholder must provide an accounting of such sale proceeds, such as a copy of the Report of Sale and all Auditor's Reports in a foreclosure proceeding, to the Trustee, along with the remittance of any surplus proceeds.

Excess Proceeds from the Liquidation of Assets. Should the proceeds from the liquidation of assets be in excess of the amounts needed to satisfy the remaining balance of the Sandy Spring claim, such excess proceeds shall be paid to junior lienholders in order of their priority and then unsecured creditors pro rata.

## Article VII. Trustee Compensation

The Trustee, Monique D. Almy, Esq., Crowell & Moring LLP, 1001 Pennsylvania Avenue, N.W., Washington, D.C 20004, shall be paid for the services rendered in this Chapter 11 case an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**. All fees and expenses requested by the Trustee, including those on Appendix E-1, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

For services provided after the Confirmation Date, the Trustee shall file a notice with the Bankruptcy Court of her fees and expenses incurred and serve a copy such notice on all parties in interest. Absent an objection filed within thirty (30) days of the notice, such amounts shall be paid by the Trustee from the funds received from the Debtors.

## Article VIII. Attorney Compensation

The Debtors' attorneys, Joseph M. Selba, Esq. and Tydings & Rosenberg LLP, One East Pratt Street, Suite 901, Baltimore, MD 21202, shall be paid for the services rendered to the Debtors herein as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**. All fees and expenses requested by the Debtors' attorney, including those on Appendix B, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

For services provided after the Confirmation Date, the Debtors' attorney shall file with the Bankruptcy Court a notice of fees and expenses incurred and serve a copy such notice on all parties

in interest. Absent an objection filed within thirty (30) days of the notice, such amounts shall be paid by the Trustee from the funds received from the Debtors.

## Article IX. Liquidation Analysis

Attached hereto as **Appendix D** is the Liquidation Analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of the Bankruptcy Court.

## Article X. Debtors' Disposable Income and Plan Funding

An exhibit describing (i) the Debtors' Projected Disposable Income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan is attached as **Appendix E**.

## Article XI. Executory Contracts and Unexpired Leases

1. Assumption. Pursuant to § 365 of the Bankruptcy Code, the Debtors assume each executory contract and unexpired lease listed on **Appendix F**, effective upon the effective date of this Plan. To the extent the Debtors propose to make cure payments as may be required under § 365(b), those cure payments shall be made as reflected on **Appendix F**.

2. Rejection. The Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases not (i) expressly listed on **Appendix F** and assumed under this Plan; (ii) previously assumed, and if applicable assigned, before the Effective Date; or (iii) subject of a pending motion to assume (and if applicable, assign). A proof of claim arising from the rejection of an executory contract or an unexpired lease under the Plan must be filed with the Court and served on the Trustee and the Debtors no later than 30 days after the Effective Date.

3. Insurance Policies. Notwithstanding the preceding Section 12.01, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto are treated as Executory Contracts that will be assumed under the Plan.

## Article XII. Property Vests in Debtors Free and Clear

Except as provided in this Plan or the Order confirming this Plan, all of the property of the Estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtors as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

For the avoidance of doubt, except as otherwise set forth in this Plan or by Order of the Bankruptcy Court, the holders of allowed secured claims shall retain their liens until such secured

claims are satisfied in accordance with the terms of this Plan. Upon satisfaction pursuant to the terms of this Plan or by Order of the Bankruptcy Court, the holders of such secured claims shall cause their liens to be released.

## Article XIII. Confirmed Plan Binding on Debtors and Creditors

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtors, each and every creditor of the Estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

## Article XIV. Discharge

The Debtors seek confirmation of the Plan under Section 1191(b). Thus, upon the payment by the Debtors of the sums required under this Plan and application to the Court, the Debtors shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code.

## Article XV. Miscellaneous

1. Definitions and Rules of Construction. The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

   (a) Administrative Expense Claim shall mean any Claim which is entitled to administrative priority status pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, the fees and expenses of the Professionals employed by the Debtors and any taxes incurred during the pendency of this case. Applications for Administrative Expense Claims incurred prior to the Confirmation Date shall be filed within thirty (30) days thereof.

   (b) Administrative Escrow Account shall mean the funds paid by the Debtors and held by the Trustee in escrow pending further Order of the Court for the purpose of paying allowed administrative expense claims.

   (c) Allowed with respect to any Claim shall mean: (i) a Claim against the Debtor(s) that has been listed on the Debtors' Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made by the Debtors or a party in interest or as to which any objection has been determined by a Final Order to the extent

such objection is determined in favor of the respective Holder or (iii) any Claim expressly Allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtors and without any further notice to or action, order or approval of the Bankruptcy Court.

(d) Confirmation Date shall mean the date of entry of the Order of the United States Bankruptcy Court for the District of Maryland confirming this Plan.

(e) Effective Date. The Effective Date of this Plan is the first business day following the date that is fourteen days after the Confirmation Date. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated. The Debtors shall file a Notice of Effective Date within seven (7) days of the Effective Date.

(f) Estate. The Debtors' Estate shall mean the respective Chapter 11 bankruptcy estates of the Debtors as defined by § 541 of the Bankruptcy Code.

(g) Unsecured Claim shall mean any Claim which is not an Administrative Expense Claim, Priority Tax Claim or a Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (ii) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Debtors' property securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (iii) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, and (iv) any Claim designated as an Unsecured Claim elsewhere in the Plan.

2. Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

3. Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

4. Appendices. The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

5. Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

6. Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7. Modification of Plan. The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan and to solicit acceptances of any amendments or modifications hereto, at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1193 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

8. Default Provisions. The Debtors shall be deemed to be in default under the Plan if a payment called for by the Plan is not made timely. Should the Debtors default in any payment under this Plan, the Trustee or any creditor may file with this Court a Notice of Default in Plan Payments and shall provide notice to the Debtors and the Debtors' attorney. The Debtors may cure such payment default within thirty (30) days of notice. Should the Debtors fail to cure any payment default pursuant to these provisions, the Trustee or creditor shall have the following remedies to use and employ at their discretion: (i) move this Court to compel the Debtors to comply with the terms of this Plan, payment of such defaulted payment, together with costs for such prosecution as well as reasonable attorneys' fees, (ii) move this Court to Convert this case to another Chapter under the Bankruptcy Code and enforce its claim for legal fees as a priority claim in such case, (iii) move this Court to dismiss this case for material default in Plan payments and disbursements, and/or (iv) move this Court to terminate the automatic stay to allow the exercise of any secured interests. Nothing herein shall limit the Trustee's or any creditor's right to move for dismissal on other grounds, including but not limited to non-monetary defaults.

9. Disclosure of Continued Officers/Director and Compensation of Insiders. Pursuant to Section 1129(a)(5), the Debtors submit that the following individuals have served and will continue to serve as officers of the Debtors: Kara Anne DiPietro, President/Owner of both Debors, with gross annual compensation of $250,000.

Article XVI. Plan Proposed in Good Faith

The Debtors represent that it is within Debtors' ability to carry out this Plan, and the Plan is submitted in good faith.

Article XVII. Retention of Jurisdiction

The Court shall retain jurisdiction of these Chapter 11 cases to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtors and property of the Debtors' Estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy cases; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

DATED: July 24, 2023

[signature]
Holdings Management Company, Debtor
BY: Kara Anne DiPietro, President/Owner

[signature]
H.M.C., Inc., Debtor
BY: Kara Anne DiPietro, President/Owner

/s/ Joseph M. Selba
Joseph M. Selba, Fed. Bar No. 29181
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel.: 410-752-9753
Email: jselba@tydings.com
*Counsel for Debtors*

**<u>Appendix A</u>**
(Debtors' Business History)

Debtor H.M.C., Inc. ("H.M.C.") is a Maryland corporation that was incorporated in 1999 and operated out of Columbia, MD. H.M.C. was in the business of commercial foodservice design-build, primarily contracted by large or mid-size foodservice facility operators nationwide for the government, healthcare systems, and university systems. H.M.C. relied on just a few clients for its work, which was in large part sole-sourced, meaning that the H.M.C. did not need to competitively bid for projects. Beginning in 2017, H.M.C. was dealt a number of setbacks, including the loss of its largest client, the embezzlement and tax fraud of its controller, the misconduct by an IRS revenue officer, and, then ultimately, being a victim in the theft/fraud scheme of an unscrupulous lending operation that is now under SEC receivership and criminal proceedings.

Debtor Holdings Management Company ("Holdings") is a Maryland corporation founded in 2019 and operates as a commercial manufacturer of custom architectural millwork packages and acoustic building materials. As a 100% woman-owned, small business, Holdings is contracted by large and mid-size construction managers, general contractors, product designers, architects, procurement managers, supply chain buyers, origin manufacturers, resellers, and wholesalers. Holdings occupies a 33,000 sg. ft. facility in Savage, Maryland and employs approximately twenty (20) people. Holdings has generated over $8,000,000 in revenue in its short existence and has a backlog totaling over $7,500,000. In addition to custom-designed manufacturing, Holdings also manages the installation of its architectural millwork packages by subcontracting to other local, small, and minority-owned businesses. A second revenue stream for Holdings is Baux, a world leader in sustainable acoustic products for any interior environment. Holdings serves as the North American manufacturer for Baux.

The impetus for the Debtors' bankruptcy filings was significant cashflow issues suffered by Holdings due to non-payment on two large projects for which it had already completed work. One being a local state college where the total for all work performed by Holdings exceeds $2,500,000, yet Holdings remains to be paid approximately $1,000,000 by the general contractor, despite completion in September 2022 and with no deficiencies reported. The second project being a federal government building in Northern Virginia, where Holdings completed work of approximately $1,800,000, yet has been paid less than $850,000.

Both H.M.C. and Holdings are owned solely Kara DiPietro. As H.M.C. was in distress and struggled to fulfill its obligations to creditors, Holdings assisted by supporting H.M.C.'s operations, enabling H.M.C. to finish its projects and not default on its contracts. This support system saved H.M.C.'s clients and its surety from losses that could have totaled many millions of dollars. The hope was that H.M.C. would regain its strength while being supported by Holdings. Unfortunately, H.M.C. was not able to regain the market share that it once had as a foodservice design build contractor and, therefore, has not been able to function as a self-sustaining individual entity. Several creditors have asserted claims against both entities for the same liabilities, and in January 2023 one of H.M.C.'s creditors obtained a judgment against Holdings on the basis of successor liability. The Debtors' cases are being jointly administered and, given the successorship claims from H.M.C. to Holdings, which are expected to be significant, substantive consolidation

is a proposed term of the instant Plan.

Commenced on an emergency basis, the Debtors' Chapter 11 proceedings continue to be hamstrung by the cashflow issues that prompted the filing. The nature of the construction industry adds to the difficulty, as some of the projects that Holdings has worked on and/or continues to work on are subject to performance and payment surety bonds, plus several creditors have asserted statutory lien rights on funds owed to Holdings. Moreover, some (but not all) of the general contractors that Holdings was under contract with have seemingly made the determination to take advantage of Holdings' financial distress for their own gain; that is, despite no prior complaints with Holdings' performance they continue to refuse paying for work performed.

The future of the Holdings is dependent upon completing its pending contracts, for its benefit and the benefit of the general contractors, the sureties, and the subcontractors/suppliers on those projects who are creditors. In addition, Holdings continues to obtain new contracts and has modified its business terms and target projects to prevent the cashflow problems from repeating.

**Appendix B.1**

(Classification and Treatment of Claims and Interests)

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[3] |
|---|---|---|---|---|
| n/a | Administrative Expense Priority Claims | $75,000 (est.) | Payment in full of allowed amount from and Administrative Escrow Account held by Trustee (TBD) and the remainder over twelve (12) months. | 100% |
| I | Priority Tax Claims<br>- IRS<br>- MD<br>- PA<br>- MA<br>- VA | claim amount:<br>TBD[4] | Payment in full with statutory interest[5] via monthly installments [no later than February 24, 2028][6] ($TBD/quarter.)<br>—**Impaired** | 100% |
| II | Allowed Secured Tax Claims | Zero (0) | Claim Objection<br>– **Impaired** | Zero (0) |

[3] Source of estimates is from (i) Debtors' Schedules, filed claims, account statements, and payoff notices; and (ii) Debtors' Projected Disposable Income, which remains in flux.

[4] Debtors dispute the amounts asserted in the filed proofs of claim, as such amounts will be significantly reduced or negated upon the processing of the Debtors' pending amended tax returns. The Debtors will file claim objections as needed.

[5] Interest at the applicable statutory rate per Section 511.

[6] *See* Section 129(a)(9)(C)(ii).

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[3] |
|---|---|---|---|---|
| III | Allowed Secured Claim of Sandy Spring Bank | $250,000 | Cramdown: paid over 60 months at 9.75% ($15,750/quarter) – **Impaired** | 100% |
| | | Remainder of claim (~$1,400,000) | Surrender of receivables due from and/or claims against Holder Construction and Grunley Construction – **Impaired** | |
| IV | Allowed Secured Claim of Howard County | $50,000 | Cramdown: paid over 60 months at 9.75% ($3,150/quarter) – **Impaired** | 100% |
| V | Allowed Secured Claim of Ford | $500 | Cramdown: payment upon Effective Date – **Impaired** | 100% |
| VI | Allowed Secured Claim of Stiles Machinery | $30,000 | Cramdown: paid over 60 months at 9.75% ($1,750/quarter) – **Impaired** | 100% |
| VII | Allowed Secured Claim of Mitsubishi | $70,000 | Cramdown: paid over 60 months at 9.75% ($4,500/quarter) – **Impaired** | 100% |
| VIII | Allowed Secured Claim of Wells Fargo | $500 | Cramdown: payment upon Effective Date – **Impaired** | 100% |

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[3] |
|---|---|---|---|---|
| IX | Pre-Petition Cure for Assumed Lease (DCT Bollman MD) | $201,591.75 | Paid over 60 months ($10,000/quarter) – **Impaired** | 100% |
| X | Allowed Unsecured Claims (included cramdown secured claims) | ~$5,000,000 | Pro rata from Disposable Income for Unsecured Creditors (annual distribution) – **Impaired** | 2% |
| | Equity Interests | | n/a | Retained (per § 1191) |
| | Post-Confirmation Administrative Claims | $15,000 (est.) | Paid pursuant to 30-day notice provisions set forth in Plan. | 100% |

**<u>Appendix B.2</u>**

(Comparison of Claims and Interests)

Chart follows.

| | | APPENDIX B.2 | | | |
|---|---|---|---|---|---|
| | | | | | |
| POC# | Class | Claimant | Amount Scheduled | Disputed? | Claim Amount |
| 41 | IX | DCT Bollman MD | 168,861.58 | | 201,591.75 |
| | I | Commonweath of VA | 2,584.00 | | |
| HMC 22 | I | Comptroller of Maryland | 100,000.00 | | 81,569.00 |
| 13 | I | Massachusetts Dept. of Revenue | | | 11,361.67 |
| 56 | I | MD DLLR | | | 22,417.06 |
| 55 | I | MD DLLR | | | 19,053.74 |
| 6 & 15 | I, II | IRS | | X | 669,150.22 |
| 18 | II | PA Department of Revenue | 45,000.00 | X | 36,326.30 |
| 25 | III | Sandy Spring Bank | 1,623,105.70 | | 1,683,035.94 |
| 31 | IV | Howard County Economic Dev. | | | |
| | V | Ford | 2,909.96 | | |
| 33 | VI | Stiles Machinery | 96,480.96 | | 61,940.16 |
| 46 | VII | ENGS/Mitsubishi | 133,741.22 | | 141,958.52 |
| | VIII | Wells Fargo | 2,201.27 | | |
| | X | ASSI Fabricators | 1,080.00 | | |
| 20 | X | Howard County | | | 8,024.44 |
| 31 | X | Howard County Economic Dev. | 404,090.84 | | 460,642.70 |
| 29 | X | SECU | 404,098.96 | | 408,272.77 |
| HMC 20 | X | Truist | 25,000.00 | | 33,219.55 |
| | X | A&M Hardward | 1,028.00 | | |
| 23 | X | A&M Supply | 20,021.30 | | 32,084.83 |
| | X | Adobe Systems | 3,301.60 | | |
| | X | Advance Business Systems | 1,685.05 | | |
| 27 | X | Advantage Industries | 11,111.27 | | 12,097.74 |
| | X | Aflac | 10,258.39 | | |
| | X | Alliance Material Handling | 1,243.38 | | |
| HMC 8 | X | American Express | | | 244,449.09 |
| | X | AWI Quality Certification | 14,772.24 | | |
| 26 | X | BDC Oakland Mills | | | 380,434.96 |
| 43 | X | BG&E | 12,115.76 | | 25,237.10 |
| HMC 11 | X | BILLD Exchange | 211,727.44 | | 225,339.00 |
| | X | BMG Metals | 555.19 | | |
| 2 & 12 | X | BMT Capital | | | 120,397.00 |
| | X | Brickstone Group | | X | |
| 42 | X | CDS Business Services (Newtek) | 0.00 | X | 2,067,738.10 |
| 52 | X | Capital Assist | 111,183.75 | X | 89,367.00 |
| | X | CapitalPlus Supply Chain Partners | 170,377.68 | | |
| 47 | X | Chesapeake Plywood | 9,836.16 | | 5,347.20 |
| | X | Chespeake Woodworking | 53,557.07 | | |
| 21 | X | Cintas | 841.68 | | 1,290.51 |
| | X | Comcast | 1,046.11 | | |
| 17 | X | Complete Business Solutions Group | 0.00 | X | 11,557,923.27 |
| | X | Counter Collective | 12,656.10 | | |
| | X | Culligan of Annapolis | 313.50 | | |
| 5 | X | D.S. Brown Machinery | 11,252.53 | | 11,252.53 |
| | X | Dinosaw | 877.65 | | |

| | | | | | |
|---|---|---|---|---|---|
| 9 | X | DK Finishing | 65,992.60 | | 101,503.56 |
| | X | Dzurek, Gerald | 85,000.00 | | |
| | X | Fastenal Company | 636.00 | | |
| 16 | X | First Advance | | | 345,828.81 |
| 45 | X | Grunley | | | 278,609.49 |
| | X | HardHat Workforce Solutions | 1,623.75 | | |
| | X | Hofmeister & Breza | 7,735.00 | | |
| 30 | X | Idea 247 | | X | 36,247.81 |
| 53 & 54 | X | Johnson-Lancaster | 297,960.71 | | |
| | X | Knightsbridge | | | |
| | X | Knoll Textiles | 1,819.60 | | |
| 39 | X | Koffel Associates | | | 3,000.00 |
| | X | KSW Millwork | 39,388.53 | | |
| | X | L.H. Woodworking | 523,389.44 | | |
| | X | LBS Corporation | 1,427.45 | | |
| | X | Levelset Capital | 301,239.80 | | |
| | X | LUUM | 3,115.81 | | |
| | X | Lynn Ladder & Scaffolding | 8,503.95 | | |
| 8 | X | Mace Enterprises | 134,836.27 | | 142,006.43 |
| | X | Maraly Construction | 57,580.00 | | |
| 22 | X | Matthews, Terry | 83,257.59 | | 83,257.59 |
| | X | Microvellum Software | 690.88 | | |
| 32 | X | Newtek | | | 1,021,137.86 |
| 34 | X | NTZ Mazzuca | | | 184,499.00 |
| | X | O'Malley Wood Products | 47,090.98 | | |
| 36 | X | Olympic Upholstery Co. | 41,125.00 | | 41,125.00 |
| | X | OMA | 28,940.00 | | |
| | X | PetraFab | 91,000.00 | | |
| | X | Pitney Bowes | 1,207.30 | | |
| | X | Powder Coat Finishes | 1,956.00 | | |
| | X | Principal Life Insurance | | | |
| | X | Printing & Promotional Unlimited | 344.50 | | |
| | X | PSR Construction & Management | 15,220.65 | | |
| 40 | X | QFS Capital | | | 363,098.25 |
| | X | Republic Services | 468.74 | | |
| 48 & 49 | X | Rich Moe Enterprises | 150,000.00 | X | 347,952.64 |
| | X | Richelieu | 1,626.48 | | |
| 51 | X | Robins & Morton Group | | | 882,408.88 |
| | X | Ryan, Ronald | 18,645.43 | | |
| | X | Ryder Transportation | | | |
| 24 | X | Sandy Spring Bank (PPP Loan) | | | 878,870.53 |
| | X | Saxton & Stump | 10,000.00 | | |
| 7 | X | Sherwin Williams | 6,063.96 | | 8,013.21 |
| | X | Sieling & Jones | 8,000.00 | | |
| 37 | X | Great Midwest / Skyward | | | 860,535.25 |
| 10 | X | Spacesaver Interiors | 59,617.33 | | 59,617.33 |
| | X | Stainless Works | 5,050.00 | | |
| | X | Sunbelt Rentals | 23,617.89 | | |
| | X | SWEPT Facility Services | 11,911.52 | | |

| | | | | | |
|---|---|---|---|---|---|
| | X | TimeClock Plus | 921.86 | | |
| | X | Transamerica Premier Life Insurance | | | |
| | X | Travelers | 14,737.30 | | |
| 50 | X | Turner Construction | | | 52,414.00 |
| 3 | X | Uline | 7,918.49 | | 7,198.49 |
| | X | Unishippers | 20,592.67 | | |
| | X | Velocity | 1,752.00 | | |
| 28 | X | Verizon | | | 1,455.23 |
| 11 | X | W.B. Mason | 1,502.13 | | 2,163.14 |
| 2 | X | Wenger Corp. | 175,839.00 | | 175,839.00 |
| 44 | X | White & Williams | | | 607,726.26 |
| 4 & 14 | X | Whiteford Taylor | | | 208,488.68 |
| 35 | X | White Cap Supply | 13,447.50 | | 13,447.50 |
| 38 | X | Wohlsen | | | 796,556.51 |
| 19 | X | Wurth Wood Group | 69,806.58 | | 69,806.58 |
| | X | Zbest | 9,200.00 | | |

**Appendix C**

(Claims Being Modified Under Section 1190(3))

N/A.

**Appendix D**
(Liquidation Analysis)

| Item | Market Value and Basis for Valuation[7] | Lien or Interest | Equity for Estate |
|---|---|---|---|
| Security deposit | 25,442 | Landlord | 0 |
| Accounts Receivable | 2,511,383 (scheduled) | Sandy Spring Bank | 0 |
| Inventory | 452,315 | Sandy Spring Bank | 0 |
| Office Equipment | 168,058 | Sandy Spring Bank | 0 |
| Vehicles | 73,885 | Sandy Spring Bank / Truist | 0 |
| Machinery | 470,625 | Mitsubishi / Stiles / Wells Fargo | 0 |
| Claims | 700,000 | Sandy Spring Bank | 0 |
| Tax Refunds | TBD | Sandy Spring Bank | 0 |
| | | | |
| HMC Accounts Receivable | 131,000 | Newtek | 0 |
| HMC claims | u/k | Newtek | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | **TOTAL EQUITY:** | **0** |

[7] Valuation as of Petition Date, as reflected on Schedules (ECF 1, Case No. 23-11233; and ECF 1, Case No. 23-11234)

**Appendix E-1**
(Projected Disposable Income)

Supplements to be filed:

- Income Statement for 2022
- Income Statement for 2023-Q2
- Projections

**<u>Appendix E-2</u>**

(Assumptions and Support for Projected Disposable Income)

Supplements to be filed.

**Appendix E-3**

(Sources and Value of Funds and Assets for Distributions)

I. **Projected Disposable Income.** Monthly payments of $20,000 for 60-month Plan.

II. **Liquidation of Assets and Claims.** Accounts Receivable and Avoidance Actions.

III. **Distribution of Liquidation Proceeds in Excess of Projections.** Excess liquidation proceeds will be used to satisfy the remaining amounts due under the Plan.

**Appendix E-4**
(Summary of Payments Under Plan)

| **Month** | **Debtors' Payment Due Under Plan** | **Distributions By Trustee** |
|---|---|---|
| Nov'23 and monthly for 60 months | $20,000/month | |
| Feb'24 and quarterly until balance of Plan paid | | $60,000/quarter<br><br>Quarterly payments until claims satisfied per Plan terms –<br><br>Admin Claims: 7,500<br>Class I: TBD<br>Class III: 15,750<br>Class IV: 3,150<br>Class VI: 2,850<br>Class VII: 2,200<br>Class IX: 10,000<br>Class X: 4,500 |
| Annual | Disposable Income for Unsecured Claims | TBD |

**Appendix F**

(Assumed Executory Contracts and Unexpired Leases)

| Name and Address of Party to Debtor's Executory Contract | Description of Executory Contract [Or Contract ID No.] | Proposed Cure Amount and Anticipated Date of Cure Payment |
|---|---|---|
| DCT Bollman MD LLC 20<br>c/o Prologis Management, LLC<br>6711 Columbia Gateway, #130<br>Columbia, MD 21046 | April 21, 2021 Lease; & September 30, 2021 First Amended to Lease Agreement for 8705 Bollman Place, #100, Savage, MD 20763 | $201,591.75 – paid quarterly per Class IX treatment |